UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

JOEL VASQUEZ,

      Defendant.

**MEMORANDUM & ORDER**
96-CR-1044 (HG)

**HECTOR GONZALEZ**, United States District Judge:

  Defendant Joel Vasquez moves for a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) and U.S.S.G. § 1B1.13 ("Section 1B1.13"). He requests, alternatively, sentences of time served, 360 months' imprisonment, or 384 months' imprisonment. ECF No. 468 (Defendant's Motion); ECF No. 472 (Defendant's Reply). The Government does not oppose a limited reduction of Mr. Vasquez's sentence but asks that he be resentenced to a total term of 412 months' imprisonment. ECF No. 471 (Government's Opposition). For the reasons set forth herein, the Court GRANTS Mr. Vasquez's motion and reduces his sentence to 396 months' imprisonment.

## FACTUAL BACKGROUND

  On October 1, 1997, following a jury trial in front of Judge Nickerson, Mr. Vasquez was convicted of the following five counts: (1) conspiracy to possess with intent to distribute cocaine (Count One); (2) conspiracy to obstruct interstate commerce by robbery (Count Two) ("Hobbs Act Robbery"); (3) attempting to possess cocaine with intent to distribute (Count Three) (together with Count 1, the "Narcotics Distribution Counts"); (4) using and carrying a firearm in connection with the conspiracies alleged in Counts One and Two (Count Seven); and (5) using and carrying a firearm in connection with Count Three (Count Eight) (together with Count

Seven, the "Section 924(c) Counts").[1] ECF No. 471 at 2. Mr. Vasquez's conviction stems from his role as a leader of a street gang that committed armed robberies of drug dealers and then resold the stolen drugs. ECF No. 471 at 1; ECF No. 468 at 3. Mr. Vasquez and his co-defendants effected these robberies by carrying and brandishing firearms and by both threatening and engaging in other violent conduct such as beating, burning, and stabbing. ECF No. 471 at 2; ECF No. 468 at 3.

On November 13, 1998, Judge Nickerson sentenced Mr. Vasquez to a total of 660 months' imprisonment followed by five years' supervised release. ECF No. 207 (Judgment as to Joel Vasquez); *see also* November 13, 1998, Minute Entry. As laid out in a decision Judge Nickerson issued on December 1, 1998, explaining his findings and conclusions with respect to the Defendants' sentences, Mr. Vasquez was deemed to be in Criminal History Category III, and his Sentencing Guidelines base offense level of 32 was increased by eight total points based on: (1) his leadership role with respect to the offense; (2) a victim-related adjustment; and (3) an obstruction of justice adjustment because of his reckless flight from law enforcement officials at the time of his arrest. *See United States v. Cambrelen*, 29 F. Supp. 2d 120, 128 (E.D.N.Y. 1998).[2] Mr. Vasquez was sentenced to two concurrent 360-month sentences, the lowest-possible sentence under the Sentencing Guidelines, which were mandatory at the time, on the Narcotics Distribution Counts, one concurrent 210-month sentence on the Hobbs Act Robbery Count, one

---

[1] On October 1, 1997 Mr. Vasquez's five co-defendants were also convicted on various charges after trial. As relevant to Mr. Vasquez's present motion, three of his co-defendants, Jose Rivera, Francisco Sepeda (a/k/a Eddie Brown), and Ryan Cambrelen, were convicted of the same five counts as Mr. Vasquez.

[2] Unless noted, case law quotations in this Order accept all alterations and omit internal quotation marks, citations, and footnotes.

2

60-month sentence on the first Section 924(c) count, to run consecutive to all other counts, and, as required at the time, one 240-month sentence on the second Section 924(c) count, to run consecutive to all other counts.³ His co-defendants who were convicted on the same five counts also received lengthy sentences—Mr. Rivera was sentenced to life imprisonment, Mr. Sepeda was sentenced to 510 months' imprisonment, and Mr. Cambrelen was sentenced to 535 months' imprisonment.

On December 18, 2019, Mr. Vasquez filed a motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c) and Amendment 782 of the Sentencing Guidelines, which changed how the base offense levels in the Sentencing Guidelines' Drug Quantity Table incorporated the statutory mandatory minimum penalties for such offenses. *See* U.S.S.G. Amendment 782; *see also* ECF Nos. 373, 374 (Motions for Sentence Reduction). The Government agreed that a limited sentence reduction of up to 68 months on the Narcotics Distribution Counts was appropriate under Amendment 782. ECF No. 378 (2020 Government Opposition to Sentence Reduction). Accordingly, on June 3, 2020, Judge Dearie reduced Mr. Vasquez's sentence on the Narcotics Distribution Counts from 360 to 292 months, lowering Mr. Vasquez's total sentence from 660 to 592 months. ECF Nos. 383, 384 (Orders Reducing Sentence). Mr. Vasquez, who was in his early twenties at the time of his arrest, has now served more than 27 years of his sentence, and is expected to be released on March 21, 2039, when he will be 68 years old. ECF No. 468 at 2.

---

³ Under the version of Section 924(c) in effect at the time, the sentences on the two Section 924(c) counts that arose out of the same indictment had to be "stacked" at sentencing, resulting in a lengthy mandatory consecutive sentence, because any second Section 924(c) conviction was considered a "second or subsequent" conviction regardless of whether the first Section 924(c) conviction had "become final." *Deal v. United States*, 508 U.S. 129, 134–35 (1992).

## **LEGAL STANDARD**

As relevant to this case, 18 U.S.C. § 3582(c)(1)(A)(i) provides that, once a defendant has "fully exhausted all administrative rights," the court may reduce his sentence, "after considering the factors set forth in [28 U.S.C. §] 3553(a)" if it finds that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Accordingly, in determining whether a reduction in Mr. Vasquez's sentence is appropriate, the Court will first determine whether he has exhausted his administrative remedies. Next the Court will determine whether extraordinary and compelling reasons warrant a reduction in his sentence. The Court will then confirm that a reduction in Mr. Vasquez's sentence is consistent with Section 1B1.13, the applicable policy statement issued by the Sentencing Commission. Finally, the Court will consider the factors set forth in 28 U.S.C. § 3553(a) (the "Section 3553(a) Factors").

## **DISCUSSION**

### **I.    Administrative Exhaustion**

"[A]bsent waiver or forfeiture by the government," *see United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021), a defendant may bring a motion to reduce his sentence "after [he] has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier," *see* 18 U.S.C. § 3582(c)(1)(A). Mr. Vasquez asserts that he has exhausted "the statutory prerequisite" to his motion because more than 30 days have lapsed since he made a written request to the warden of his institution, FCI Hazelton, for the BOP to move the Court for his compassionate release. ECF No. 468 at 2. More specifically, Mr. Vasquez asserts that on October 30, 2022, he asked the warden of his institution in writing to file

4

a motion in this Court for his compassionate release. ECF No. 468-3 at ¶ 7 (Vasquez Declaration and Exhibits). Mr. Vasquez received the warden's denial of his request in writing on December 7, 2022, but the request was dated November 17, 2022. *Id.* at ¶ 8. On December 11, 2022, Mr. Vasquez filed an administrative appeal of the warden's denial, but he has not received any communications about his appeal since it was filed. *Id.* at ¶ 9.

"[D]istrict courts in this circuit have split on how to interpret the statute's provision permitting an inmate to move for a sentence reduction after the lapse of 30 days from the receipt by the warden of an inmate's request for the BOP to move on his behalf." *United States v. Saladino*, 7 F.4th 120, 123 (2d Cir. 2021). While some district courts have held that the statute permits an inmate to file a motion only "after he has waited 30 days from the Warden's receipt of his request for compassionate release *without receiving a response*," and that if the BOP timely responds, the inmate must "satisfy the same exhaustion procedure that applies to routine administrative grievances," others have held that after 30 days have passed from when the inmate served his request on the Warden, the inmate may file a motion "regardless of whether the warden responds to the inmate's request." *Id.* at 123–124. Like the Court in *Saladino*, however, this Court need not decide whether Mr. Vasquez has actually satisfied the exhaustion requirement with respect to his motion for compassionate release.

In its opposition, the Government states only that Mr. Vasquez "submitted a request for compassionate release to the Acting Warden of FCI Hazelton on October 30, 2020," and that "[o]n November 17, 2022, the Acting Warden denied the request." ECF No. 471 at 5. The Government does not assert that Mr. Vasquez failed to exhaust his administrative remedies and does not oppose a limited reduction of Mr. Vasquez's sentence, stating that Mr. Vasquez "is eligible for a resentencing on Counts Seven and Eight." ECF No. 471 at 7. As the Circuit has

held, "§3582(c)(1)(A)'s exhaustion requirement is a claim processing rule and accordingly may be waived or forfeited." *Saladino*, 7 F.4th at 124; *see also Keitt*, 21 F.4th at 71. Accordingly, because the Government has not raised an exhaustion defense, the Court finds that it has forfeited any such defense and the Court is "free to consider the merits" of Mr. Vasquez's motion. *Saladino*, 7 F.4th at 123; *see also United States v. Romano*, No. 22-cr-12, 2023 WL 8735203, at *2 (E.D.N.Y. Dec. 19, 2023) ("[T]he government's decision not to raise an exhaustion defense permits the court to consider the merits of the defendant's motion."); *United States v. Espinal*, No. 10-cr-74, 2021 WL 3566579, at *2 (E.D.N.Y. Aug. 12, 2021) (proceeding to address the merits of defendant's motion for compassionate release because the Government did not challenge exhaustion requirement).

## II. Extraordinary and Compelling Reasons Warrant a Reduction of Mr. Vasquez's Sentence

The Court next examines whether Mr. Vasquez has shown that extraordinary and compelling reasons warrant a reduction of his sentence. In *United States v. Brooker*, the Second Circuit held that "the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release" and that a "a district court's discretion in this area . . . is broad." 976 F.3d 228, 237 (2d Cir. 2020). "The only statutory limit on what a court may consider to be extraordinary and compelling is that rehabilitation *alone* shall not be considered an extraordinary and compelling reason." *Id.* at 238. This broad discretion was codified in Section 1B1.13 (the Policy Statement covering applications for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)) of the recently amended Sentencing Guidelines, which went into effect as of November 1, 2023. In addition to defining certain specific circumstances in which extraordinary and compelling reasons may exist, Section 1B1.13 includes a catch-all provision that provides

6

that extraordinary and compelling circumstances may exist if "[t]he defendant presents any other circumstances that, when considered by themselves or together with any of the reasons described [herein], are similar in gravity to those described [herein]." U.S.S.G § 1B1.13(b)(5).

Mr. Vasquez contends that a number of factors, considered together, warrant a reduction, including: intervening changes in sentencing law and with respect to Section 924(c) stacking; the unusually long duration of his sentence; disparities between his sentence and the sentences imposed on his co-defendants who have already been resentenced; and his significant rehabilitation. ECF No. 468 at 5–17. The Government agrees with Mr. Vasquez that intervening changes in sentencing law and with respect to Section 924(c) stacking and disparities between Mr. Vasquez's sentence and the sentences imposed on his co-defendants are extraordinary and compelling reasons for a modification of his sentence. ECF No. 471 at 7–8.

### A. Section 924(c) Stacking and Changes to the Sentencing Laws

Beyond just granting district courts the broad discretion to consider "the full slate of extraordinary and compelling reasons" why compassionate release might be appropriate, the First Step Act also "took the extraordinary step of outlawing the draconian practice of stacking § 924(c) convictions for sentencing purposes in a single prosecution." *United States v. Haynes*, 456 F. Supp. 3d 496, 502 (E.D.N.Y. Apr. 22, 2020). Although the First Step Act did not make this change retroactive, courts, including the Supreme Court, have found that, where a change in the applicable sentencing law would result in a lower sentence, that development can constitute an extraordinary and compelling reason justifying a sentence reduction. *See, e.g.*, *Concepcion v. United States*, 597 U.S. 481, 500 (2022) ("[T]he First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act."); *United States v. Campbell*, No. 20-4204, 2022 WL 199954, at *2 (2d Cir. Jan. 24, 2022) (remanding for reconsideration of compassionate release motion because

7

"changes in sentencing law" may constitute "extraordinary and compelling reasons justifying a sentence reduction"); *United States v. Byam*, No. 12-cr-586, 2024 WL 1556741, at *5 (E.D.N.Y. Apr. 10, 2024) ("[T]aking Congress's legislative rejection of stacking into account . . . , the Court finds the drastic disparity between [the defendant's] sentence and the sentence he would receive today is an extraordinary and compelling reason to grant his motion."); *United States v. Carlton*, No. 05-cr-796, 2022 WL 17104061, at *5 (E.D.N.Y. Nov. 22, 2022) (finding that a 50-year sentence was unusually severe after considering changes in the applicable sentencing guidelines and that the defendant was only 28 at the time he committed the offense).

Consistent with this case law, Section 1B1.13(b)(6) provides that if a defendant received an unusually long sentence and has served at least ten years of his term of imprisonment, a change in the law "may be considered in determining whether the defendant presents an extraordinary and compelling reason" only when "such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed."

Mr. Vasquez has served more than ten years of an undoubtedly long sentence of almost 50 years. Today, with the benefit of the changes implemented under the First Step Act, a defendant sentenced on the same two Section 924(c) Counts that Mr. Vasquez faced would be sentenced to a minimum of two consecutive terms of five years' imprisonment, for a total of ten years to run consecutively to any other term of imprisonment imposed. *See* 18 U.S.C. § 924(c)(1). Mr. Vasquez, however, was sentenced to 25 years to run consecutively to any other term of imprisonment because his Section 924(c) Counts were stacked. Taking into account Congress's repudiation of stacking, the significant length of the sentence Mr. Vasquez received, the gross disparity of 15 years between the 25-year sentence Mr. Vasquez is serving on the

8

Section 924(c) Counts and the 10-year sentence he would likely receive today, and the Government's agreement with respect to the Section 924(c) Counts, the Court finds that the significant change in the law surrounding Section 924(c) stacking constitutes an extraordinary and compelling reason to grant Mr. Vasquez's motion.

### B. Sentencing Disparities Between Mr. Vasquez and his Co-Defendants

Mr. Vasquez also argues that the disparity between his sentence and the sentences imposed on two of his co-defendants, Mr. Rivera and Mr. Sepeda, after they were resentenced in 2023, constitutes an extraordinary and compelling circumstance warranting a reduction in his sentence. ECF No. 468 at 17–18. "[M]any courts have looked to the disparity between co-defendants in granting sentence reduction[s] in § 924(c) stacking cases." *United States v. Reid*, No. 05-cr-596, 2021 WL 837321, at *7 (E.D.N.Y. Mar. 5, 2021); *Byam*, 2024 WL 1556741, at *7 (considering co-defendants' sentences and concluding that the disparity between a co-defendant's reduced sentence and the defendant's sentence constituted an extraordinary and compelling circumstance); *United States v. Campbell*, 647 F. Supp. 3d 76, 87–88 (E.D.N.Y. 2022) (noting the "stark sentencing disparity" between the defendant and one of his co-defendants whose sentence was recently reduced, and concluding that it was sufficient to "trigger this Court's authority to grant relief under Section 3482(c)(1)(A)(i)").

In 2023, Mr. Vasquez's co-defendant, Mr. Rivera, who was convicted on the same counts as Mr. Vasquez, moved for a second reduction in his sentence under 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 452 at 1–2 (Rivera Compassionate Relief Decision). Judge Dearie resentenced Mr. Rivera, who had been sentenced to a longer term of imprisonment than Mr. Vasquez based on his prior drug conviction history, to a term of 360 months' imprisonment and five years' supervised release. *Id.* at 4, 7. Later that same year, another of Mr. Vasquez's co-defendants, Mr. Sepeda, who was also convicted on the same counts as Mr. Vasquez, moved for

9

a second reduction of his sentence. ECF No. 464 at 1–2 (Sepeda Compassionate Release Decision). Mr. Sepeda had a higher criminal history category than Mr. Vasquez (Category IV as compared to Mr. Vasquez's Category III) but had received a shorter term of imprisonment because the sentencing judge had applied a leadership enhancement when calculating Mr. Vasquez's original sentence. Judge Amon resentenced Mr. Brown to time served and five years' supervised release after he had been incarcerated for more than 26 years. ECF No. 464 at 8–9.

The Government argues that because of the serious nature of Mr. Vasquez's crime and because he was a leader of the group's criminal conduct, the Court should resentence him to a longer term of imprisonment than the term that Mr. Rivera received. Although the Court agrees with Mr. Vasquez that the significant disparity between the sentence he is currently serving, 592 months, as compared with the sentences imposed on Mr. Rivera and Mr. Sepeda after being resentenced, 360 months and roughly 320 months, respectively, is an extraordinary and compelling circumstance that warrants a reduction in his sentence, the Court also agrees with the Government that any reduced sentence needs to appropriately reflect the serious nature of Mr. Vasquez's offense and his more significant role in the scheme as compared to his co-defendants.

### C. Rehabilitation

Although rehabilitation "alone" does not constitute an extraordinary and compelling reason to reduce a sentence, "courts may consider it as a factor," along with other factors, "in determining if there are extraordinary and compelling reasons for compassionate release." *United States v. Qadar*, No. 00-cr-604, 2021 WL 3087956, at *10 (E.D.N.Y. July 22, 2021). What constitutes rehabilitation is left to the Court's discretion, but courts in this district have considered the following factors: the defendant's "maintenance of familial and societal relationships; letters of support both from community members and prison staff; conduct and disciplinary records while incarcerated; . . . any achievements and education obtained while

10

incarcerated; . . . gains in maturity[;] and other clear signs that a defendant's incarceration has had rehabilitative value." *Byam*, 2024 WL 1556741, at *8 (collecting cases).

Here, the Court does not doubt that Mr. Vasquez has been significantly rehabilitated, and the Government does not dispute Mr. Vasquez's rehabilitation. Mr. Vasquez has accepted responsibility for his crimes and their violent and serious nature and made an effort to atone for his past mistakes. ECF No. 468 at 9–10; ECF No. 468-8 (Vasquez Letter). He maintains close relationships with his family, including his daughters, the mother of his daughters, and his niece, all of whom wrote letters on his behalf and who will be able to provide him with support upon his release. ECF No. 468-10 (Letters of Support from Family). Mr. Vasquez has also received letters of support from members of prison staff, including the Warden and staff at one of the facilities at which he was detained. ECF No. 468-5 (Letters of Support from Staff). Warden Zerillo writes that Mr. Vasquez "has not had any negative interactions with staff or his fellow detainees" and that he "has cultivated positive interactions with all that he has come in contact with." *Id.* at 2. He discusses Mr. Vasquez's work experience as a barber and dormitory cleaner while incarcerated, referring to him as a "willing and hard working volunteer." *Id.* Other letters from prison staff refer to Mr. Vasquez as "a model inmate" who "gets along with everybody" and is a "hard worker," *id.* at 3, and as someone who "has never been disrespectful toward staff or an officer" and who "has shown growth and maturity" while detained, *id.* at 4. Other inmates have also written letters of support for Mr. Vasquez, describing him as a good influence who encouraged them to turn their lives around. ECF No. 468-7 (Letters of Support from Inmates).

Mr. Vasquez has also made the most of his incarceration—he has completed vocational courses in barbering, obtained a barber's license, and worked as a barber, painter, and dormitory cleaner. ECF No. 468 at 12–13. He has taken significant steps to educate himself, studying real

estate, corporate law, electrical work, guitar, Italian, French, and English. *Id.*; *see also* ECF Nos. 468-3, 468-4 (BOP Course Printouts). He has also taken courses in anger management and leadership. *Id*. Although Mr. Vasquez's disciplinary record is not perfect, he has not incurred a single disciplinary infraction in more than thirteen years, and the infractions he previously incurred did not involve violence. ECF No. 468 at 6; ECF No. 471 at 8.

Accordingly, the Court finds that considering the totality of the circumstances, including Mr. Vasquez's significant rehabilitation, his stacked Section 924(c) sentence, and the disparities between the sentence he is currently serving and the sentences to which his co-defendants were resentenced, extraordinary and compelling reasons warrant a reduction in his sentence.

### III. Applicable Policy Statements Issued by the Sentencing Commission

Section 3582(c)(1)(A) provides that any reduction in a defendant's sentence must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). A sentence reduction is consistent with the applicable policy statement, Section 1B1.13, if, "in addition to the existence of [] extraordinary and compelling reason[s], the defendant is not a danger to the safety of any other person or to the community." *United States v. Donato*, No. 95-cr-223, 2024 WL 1513646, at *10 (E.D.N.Y. Apr. 8, 2024). Because the Court has already considered the guidance set forth in Section 1B1.13 in determining that extraordinary and compelling reasons warrant a reduction in Mr. Vasquez's sentence, *see supra* Section II, the Court now turns to whether Mr. Vasquez is a danger to the safety of any other person or to the community.

The Government does not contend that Mr. Vasquez remains a danger to anyone's safety, and agrees that his rehabilitative efforts "provide reason for granting him a sentencing reduction." ECF No. 471 at 7–8. Although Mr. Vasquez's crimes of conviction were violent, there is no evidence in the record to suggest that Mr. Vasquez remains violent or has made any

12

threats of physical violence while incarcerated. Based on his significant rehabilitation, which the Court has already outlined, *see supra* Section II.C, the Court sees no reason to conclude that Mr. Vasquez poses a danger to the safety of another or the community and therefore finds that a reduction in his sentence is consistent with Section 1B1.13. *See, e.g.*, *Haynes*, 456 F. Supp. 3d at 517 (concluding that a defendant who had committed violent crimes did not pose a continued risk to the community because he had been a good prisoner, completed significant coursework while incarcerated, and discharged his job duties impressively); *Reid*, 2021 WL 837321, at *6–7 (finding that a defendant who had expressed remorse for his crimes, completed educational courses while incarcerated, and maintained close relationships with his family members did not pose a danger to the community).

## IV.  The Section 3553(a) Factors

Even though Mr. Vasquez has demonstrated extraordinary and compelling circumstances warranting a reduction of his sentence, the Court must still consider whether any such reduction in his sentence is consistent with the Section 3553(a) Factors. 18 U.S.C. § 3582(c)(1)(A). "Many of the applicable [Section] 3553(a) factors are incorporated in the Court's discussion of extraordinary and compelling circumstances." *Campbell*, 647 F. Supp. 3d at 89. The Court has already considered: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to protect the public from further crimes of the defendant; (3) pertinent policy statements issued by the Sentencing Commission; and (4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. *See supra* Sections II and III; *see also* 18 U.S.C. § 3553(a). In considering these factors, the Court has concluded that they are consistent with granting a reduction in Mr. Vasquez's sentence.

13

The Court now considers the remaining Section 3553(a) Factors and concludes that they are also consistent with reducing Mr. Vasquez's sentence.[4] Mr. Vasquez has already been incarcerated for more than half his life and the Court intends to impose a substantial sentence that will be sufficient for the purposes of both general and specific deterrence without being unusually and excessively long.  Mr. Vasquez has already taken advantage of educational and vocational training while incarcerated and the Court does not believe another fifteen years in custody will accomplish additional correctional goals efficiently.  The Government has not made any argument regarding restitution owed to victims of the offense and the Court is not aware of any reason why a reduction of Mr. Vasquez's sentence would impact any restitution owed to his victims.  Finally, the Court has considered the kinds of sentences provided for statutorily and in the Sentencing Guidelines for a defendant who, like Mr. Vasquez, is in criminal history category III and pled guilty to identical offenses.[5]  The Court thereby concludes that a limited reduction in Mr. Vasquez's sentence is consistent with the Section 3553(a) Factors and warranted here based on the extraordinary and compelling circumstances he has demonstrated.

---

[4] The remaining Section 3553(a) factors call for the Court to consider:  (1) the need for the sentence imposed to afford adequate deterrence to criminal conduct; (2) the need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective matter; (3) the need to provide restitution to any victims of the offense; (4) the kinds of sentences available; and (5) the kinds of sentence and the sentencing range established for the applicable category of offense and defendant as set forth in the guidelines.

[5] Today, Mr. Vasquez would be facing two consecutive five year sentences on the Section 924(c) Counts, and a guidelines range of 292-365 months on each Narcotics Distribution Count. However, the Sentencing Guidelines are no longer mandatory, and "a sentencing judge, selecting a sentence for a predicate offense, [is] not prohibited from considering the severity of a mandatory consecutive minimum sentence, and has the discretion, but not the obligation, to consider such severity." *United States v. Brown*, 935 F.3d 43, 46 (2d Cir. 2019).

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Mr. Vasquez's motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). Based on the serious and violent nature of Mr. Vasquez's crimes and his leadership role with respect to those crimes, changes in applicable sentencing law, the need to avoid significant disparities between Mr. Vasquez's sentence and that of his co-defendants while also appropriately accounting for each individual's relevant characteristics, Mr. Vasquez's significant rehabilitation, and the Section 3553(a) Factors, Mr. Vasquez's sentence is reduced to 396 months' imprisonment followed by five years of supervised release.[6] An amended judgment shall issue.

SO ORDERED.

*/s/ Hector Gonzalez* .
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
May 23, 2024

---

[6] This sentence breaks down as follows: 276 months on Count One; 210 months on Count Two, to run concurrently; 276 months on Count Three, to run concurrently; 60 months on Count Seven, to run consecutively; and 60 months on Count Eight, to run consecutively. Mr. Vasquez is also sentenced to five years of supervised release on Count One, Count Three, Count Seven, and Count Eight, to run concurrently, and three years of supervised release on Count Two, to run concurrently.